RAWLS, Judge.
Janet Loretta Babson appeals a conviction of murder in the second degree and a life sentence, setting forth eight points which she argues requires the cause to be reversed.
The only points on appeal meriting discussion here are Appellant’s contention that she was deprived of due process of law because: (1) The State monopolized the witnesses to the efime for more than six weeks, and (2) The trial court should have suppressed certain statements made by her.
*797 The facts are without serious contradiction. On January 1, 1965, at 12:05 p. m. one Betty Ward, her parents, brother and a neighbor, were standing outside her apartment building in Tampa watching a fireworks display. They watched a man and woman attempt to break into a ladies’ dress shop, and after seeing them fail to gain entrance, they saw the man return to his car, get additional tools, return to the dress shop and gain entrance. Betty called the police, took the keys out of the couple’s car, and directed the first policeman to the shop that had been forcibly entered by the couple. At this time all hell broke loose. Several shots were fired in rapid succession and the man and woman ran from the dress shop and attempted to flee on foot. Other policemen who had in the meantime arrived on the scene apprehended the fleeing couple, identified as Billy Ray and Janet Bab-son. Both were wearing gloves and a Colt Commando revolver was found on the ground near the place where Billy Ray Babson was caught. Billy Ray was wounded, and the policeman, Kirkava, who had entered the dress shop, was found with four bullet wounds in his body and was pronounced dead upon arrival at the hospital. The Babsons were identified by the witnesses standing in front of the apartment house as the man and woman who broke into the dress shop.
Janet Babson was a most talkative woman and freely made a number of statements. Immediately after her arrest, she made a statement within the hearing of the eye witnesses, and while sitting in a police car, she wrote her version of the night’s events. This statement was held to be inadmissible by the trial judge. She was taken to the hospital and then to the police station where she was advised in detail as to all her constitutional rights. Immediately thereafter, under oath she gave a 35 page statement in the presence of an investigator and court reporter denying any connection with the murder. Her statement was to the effect that she and her husband broke into the store to get her some clothes, but before they took anything there was a series of gunfire; that as they ran out of the store she almost tripped over the body of the officer; that her husband had never owned a gun; and that she did not know who did the shooting or where the gunfire came from. Two days later she sent for the investigator who arrived with his wife. She told them that while they were in the dress shop she heard a noise and told her husband that there was someone in there and he replied, “If there is, I will blow his God-damn head off.” This statement was dictated to a court reporter after the interview.
On January 7, 1965, Janet Babson employed counsel who attempted to question the police officers that had been at the scene of the crime. These officers refused to talk with defense counsel, giving as their reason a directive of the City of Tampa Police Department which required the presence of a City Attorney when any policeman gave statements to a defendant’s attorney. At a hearing on January 25, 1967, defense counsel informed the circuit judge of the directive and the judge advised that until process was issued against the City of Tampa he had no jurisdiction in the matter. The same complaint was made by defense counsel to the judge on February 6th and the same response given. Finally, at a hearing on February 17th after process was effectuated upon the City of Tampa, the Assistant City Attorney and the City Chief of Police appeared before the judge, and at this time the directive was rescinded.
Other pertinent facts are that at a hearing on motion to suppress the testimony of the officers and at the trial of cause (change of venue having been granted) defendant’s expert witness, a psychologist, testified experiments reflected that 33% to 66% of factual material available on immediate recall would be forgotten by a witness in a period of 6 weeks. This expert admitted that he had made no tests upon police officers who normally kept a log or *798 record of events. The testimony of police officers was ruled admissible.
First, Mrs. Babson contends that the state monopolized seven of the nine witnesses listed on the indictment through the use of the directive of the Tampa Police Department prohibiting police officers from giving statements to a defendant’s counsel unless an attorney for the department is present. Furthering this contention, she asserts that a proffer of her expert psychologist’s testimony revealed that by the time this directive was rescinded the memory of these witnesses had diminished from 33% to 66% of total recall. Appellant’s contentions are without merit. Defense counsel was advised the first time he brought the subject directive to the attention of the initial trial judge that until process was issued against the City of Tampa, the court was without jurisdiction. Rather than to forthwith seek affirmative relief by procuring the issuance of process against the City of Tampa, defendant’s attorney chose to let time go by and continued to complain to the trial judge who most patiently again advised defense counsel of the course he should follow, and when counsel finally followed the course outlined, he got immediate relief. As to the psychologist’s testimony, it is interesting to note that the state moved for an immediate trial, and same was not forthcoming due to defendant’s filing of 20 odd motions, a motion for continuance, a habeas corpus proceeding, and finally a motion for change of venue, which culminated in trial being delayed from February 1965, until December, 1965.
Next, Appellant argues that since the first written statement made by her was inadmissible, subsequent statements should have been held inadmissible because same were “fruit of the poisonous tree.” We reiterate, this record reflects without any question that defendant was a most talkative woman who freely and voluntarily gave her version of the events without any compulsion or coercion on the part of anyone.
As to the remaining points posed by Appellant, suffice it to say that we have carefully reviewed this extensive record and find same to be without substantial merit. This appellant was ably represented by diligent and aggressive counsel who commendably protected her constitutional rights. The major problem from her standpoint was not an oppressive sovereign, but was the irrefutable facts of her guilt.
Affirmed.
CARROLL, DONALD K., Acting C. J., and SPECTOR, J., concur.